**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBIN CARR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CASE NO. 4:17-CV-0773** |
| | § | |
| **HUMBLE INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Pending before the Court is Defendant's First Amended Motion to Dismiss. **(Instrument No. 13).**

### I.

### A.

This is an employment discrimination action brought by Plaintiff Robin Carr ("Carr" or "Plaintiff") against her former employer, Defendant Humble Independent School District ("HISD" or "Defendant"). (Instrument No. 12). Plaintiff brings claims of sex discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) and the Texas Labor Code, as well claims under Title IX of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983, and the common law tort of invasion of privacy. *Id.* Defendant moves to dismiss Plaintiff's claims of discrimination under Title VII and the Texas Labor Code as well as Plaintiff's claims under Title IX, 42 U.S.C. §§ 1981 and 1983, and the common law tort of invasion of privacy. (Instrument No. 13). Defendant does not seek to dismiss Plaintiff's claims for hostile work environment and retaliation under Title VII and the Texas Labor Code. *See id.* at 10. ("The District is not conceding or admitting that it or any of its employees actually engaged in sexual harassment or retaliation of any

kind, but believes that enough facts have been pled in the First Amended Complaint so as to make those claims unsuitable for dismissal under Rule 12(b)(6)").

**B.**

Plaintiff is a black lesbian woman who was employed full time as an at-will probationary police officer in the HISD police department. (Instrument No. 12 at 5). Plaintiff began her employment in June 2014 and resigned in February 2015 due to an alleged constructive discharge. *Id.* at 5 and 12.

Plaintiff's supervisor at HISD was Sergeant Bobby Brown ("Brown"). *Id.* at 5. According to Plaintiff, Brown displayed hostility towards her from the first day they met. *Id.* Because Plaintiff "dressed, spoke, and acted in a manner that was not as feminine as other women," she was told that she "looked gay." *Id.* Brown also spoke with Plaintiff about other women's "breasts" and "asses," because he believed that she would share his interest in such comments. *Id.* at 6. But according to Plaintiff, these comments simply "created an atmosphere where sexual harassment and discrimination in the workplace [were] prevalent." *Id.*

Plaintiff claims that Brown delayed her training because he did not approve of her sexual orientation and conformity to sex stereotypes. *Id.* at 9. Despite starting work at HISD in June 2014, she was not able to attend a training class until September 2014. *Id.* at 8. Whereas other officers were allowed to use HISD vehicles during training, Plaintiff had to use her own personal car. *Id.* Plaintiff also asked to take off work when her mother was diagnosed with terminal pancreatic cancer, but she was only permitted to leave work early a couple of times. *Id.* at 7.

Plaintiff also alleges that her co-workers discriminated against her on the basis of her sexual orientation and gender conformity. *Id.* at 9. Another female officer gave her the "silent treatment"

2

when Plaintiff was assigned to ride with her on patrol. *Id.* Plaintiff's training officer asked her sexually explicit questions and discussed his own "sexual conquests and sexual prospects daily." *Id.* Plaintiff complained about these comments to HISD Human Resources but "her complaints were ignored by the District." *Id.*

Before working at HISD, Plaintiff had never visited Humble and was unfamiliar with the area. *Id.* at 10. Because of this unfamiliarity, Plaintiff alleges that Brown "ridiculed, harassed, and cursed" her for getting lost and making wrong turns. *Id.* Brown also assigned Plaintiff to work nights even though "no other female officer worked nights." *Id.*

Plaintiff alleges that Brown placed her life in danger by assigning her to drive an old patrol car with an outdated inspection sticker, a bad battery, and no seatbelt. *Id.* Plaintiff was so appalled by the car that she complained to the federal Occupational Safety and Health Administration. *Id.* at 11. When she told Brown about her complaints, he laughed and said, "If you want to be a man you need to learn how to jump a battery." *Id.* Meanwhile, when Plaintiff sprained her ankle and asked to be assigned to light duty, Brown made her maintain the same assignments. *Id.* at 12.

On February 11, 2015, Plaintiff was contacted by Lieutenant Stanford at HISD and told that Chief Cook, the head of the department, wanted her to "resign or quit." *Id.* Plaintiff then took her resignation to Human Resources and wrote on it that she was "forced to resign not of my own free will." *Id.*

## C.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and Texas Workforce Commission within 180 days of the alleged discrimination. (Instrument No. 12 at 4-5). Within 90 days of receiving a right to sue letter, Plaintiff filed this

original action on February 10, 2017 in the 295th Judicial District Court of Harris County, Texas. (Instrument No. 1). The case was then removed to this Court on March 10, 2017. *Id.*

On June 6, 2017, Defendant filed a motion to dismiss for failure to state a claim. (Instrument No. 9). During the scheduling conference on June 16, 2017, the Court gave Plaintiff leave to amend her complaint and denied the motion to dismiss as moot. *See* (Instrument No. 11). On June 30, 2017, Plaintiff filed the First Amended Complaint. (Instrument No. 12) (hereinafter, "Complaint"). On July 14, 2017, Defendant renewed and amended its motion to dismiss. (Instrument No. 13). Plaintiff filed a response on August 4, 2017. (Instrument No. 14).

## II.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678.

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(h)(2)(B). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th

4

Cir. 2007). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.

2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. A claim for relief is implausible on its face when "the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

This "plausibility standard is not akin to a probability requirement, but asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations

omitted).

Under this rubric, dismissal is proper only if the plaintiff's complaint: (1) does not include a

cognizable legal theory, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or (2) includes

a cognizable legal theory but fails to plead enough facts to state a claim for relief that is plausible on

its face, *Turner*, 663 F.3d at 775. Ultimately, the question for a court to decide is whether the

complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong

Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

### III.

Plaintiff brings claims of sex discrimination, hostile work environment, and retaliation under

Title VII and the Texas Labor Code, the common law tort of invasion of privacy, and claims under

Title IX, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *Id.* Defendant moves to dismiss all causes of

action except those for hostile work environment and retaliation under Title VII and the Texas Labor

Code. *See* (Instrument No. 13 at 10) ("This Motion does not address Plaintiff's claims for hostile

environment sexual harassment, or retaliation").

## A.

Defendant asserts that Plaintiff's claim under 42 U.S.C. § 1983 should be dismissed because Plaintiff has not alleged the existence of an official policy or custom that was the moving force behind any constitutional injuries, which is required to hold a school district accountable under § 1983. *See* (Instrument No. 13 at 12); *see also Monell v. City of New York*, 436 U.S. 658, 694 (1978). In response, Plaintiff asserts that she identified three other incidents of sexual harassment in her department and that she was pressured to resign by the chief of HISD police, who had final policymaking authority. (Instrument No. 14 at 10).

Under *Monell*, local governments may be held liable for constitutional violations if they have a policy or practice that causes those violations. 436 U.S. at 694. When a plaintiff alleges hostile work environment without identifying an official policy, the practices of the municipality must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). "Allegations of an isolated incident[s] are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett*, 728 F.2d at 768 n.3.

Here, Plaintiff identifies three other incidents that she claims created a culture of sexual harassment. First, "[s]uspicions abounded[ed] about the inappropriate personal relationship between Sgt. Brown and another female subordinate." (Instrument No. 12 at 6). Second, another female officer accused Sgt. Brown of sending her nude pictures. *Id.* Third, someone in the department lodged a sexual harassment complaint against Plaintiff's training officer, who also bragged to

Plaintiff about his sexual exploits. *Id.* at 6 and 9.

Although these episodes are indicative of the toxic work environments facing countless women across the country, they do not arise to the level of "permanent and well settled" custom that is necessary under *Monell. See Bennett*, 728 F.2d at 767. Importantly, none of these episodes was similar to the alleged harassment that Plaintiff experienced. The allegations that "suspicions abound[ed]" about Plaintiff's supervisor having a relationship with another officer and that Plaintiff's training officer had been accused of sexual harassment are too vague and conclusory to show a pattern or practice. *See* (Instrument No. 12 at 6). Meanwhile, the fact that one employee received nude pictures does not reflect a persistent or repeated violation amounting to custom or policy. *See id.*

Plaintiff also alleges that she was subject to a discriminatory policy when the chief of HISD police, Chief Cook, encouraged her to resign through Lieutenant Stanford, and when her complaints to Human Resources went unanswered. *Id.* at 12. According to Plaintiff, the actions of the police chief and director of human resources were official county policy. (Instrument No. 14 at 10).

"[W]hether a particular official has final policymaking authority is a question of *state law.*" *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989). Under Texas law, district school boards have "the exclusive power and duty to govern and oversee the management of the public schools of the district." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting Tex. Educ. Code. § 11.151(b)); *see also Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) ("Texas law is clear that final policymaking authority in an independent school district, such as the DISD, rests with the district's board of trustees.").

In *Jett*, the Fifth Circuit determined that a school district superintendent does not have final

7

policymaking authority under Texas law because the Texas Education Code places sole policymaking authority with the board of trustees. *See* 7 F.3d at 1246. Plaintiff attempts to distinguish *Jett* by arguing that "nowhere does it claim that *only* the trustees are responsible for all policy." (Instrument No. 14 at 10-11). However, Plaintiff does not offer any authority or case law to dispute *Jett*'s central holding that "[n]othing in the Texas Education Code purports to give the Superintendent any policymaking authority or the power to make rules or regulations." 7 F.3d at 1245. Nor does Plaintiff offer any authority to show that the HISD school board delegates final decision-making authority to the police chief or director of human resources. *See* (Instrument No. 14). Accordingly, these individuals are not final policymakers under Texas law, but Plaintiff may still address their conduct through her retaliation claim under Title VII and the Texas Labor Code.

Because Plaintiff has not identified a final policymaker or custom that was the moving force behind her constitutional violations, her claims under 42 U.S.C. § 1983 are **DISMISSED.**

### B.

Plaintiff claims that Defendant invaded her privacy by allowing its employees to ask her "highly offensive" questions about her sexuality. (Instrument No. 12 at 27-28). Plaintiff also asserts that Defendant "publicized facts regarding Plaintiff's private life which were not of legitimate public concern," without stating when or how such facts were published. *Id.* at 28.

Defendant moves to dismiss Plaintiff's claim of invasion of privacy on the basis that Texas school districts are immune from most common law tort claims. (Instrument No. 13 at 15); *see* Tex. Civ. Prac. & Rem. Code § 101.051 (stating that school districts in Texas are immune from common law torts except those involving motor vehicles); *see also Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex. 1978) ("The law is well settled in this state that an independent school district is an agency of

the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort.").

In response, Plaintiff does not address Defendant's argument or discuss her invasion of privacy claim. *See* Local Rule 7.4 ("Failure to respond will be taken as a representation of no opposition"). Accordingly, Plaintiff's claim for invasion of privacy is **DISMISSED**.

## C.

Defendant seeks to dismiss Plaintiff's discrimination claims under the Texas Labor Code and Title VII for failure to state a claim. (Instrument No. 13 at 19). Because employment discrimination claims under Chapter 21 of the Texas Labor Code (formerly known as the Texas Commission on Human Rights Act) mirror Title VII, these claims may be analyzed together. *See Reed v. Neopost USA, Inc.,* 701 F.3d 434, 439 (5th Cir. 2012); *see also Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 633–34 (Tex. 2012) ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA").

To establish a *prima facie* case of sex discrimination, an employee must demonstrate that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Once an employee has made out a *prima facie* case, "an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative non-

discriminatory explanation for the adverse employment action." *Id.* If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

Plaintiff and Defendant both devote significant portions of their arguments to whether discrimination on the basis of sexual orientation is actionable under Title VII. *See* (Instruments No. 13 at 14). Although the Fifth Circuit has previously held that "[d]ischarge for homosexuality is not prohibited by Title VII," *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979), the law in this area has recently evolved. Since *Blum* was decided, the Supreme Court recognized that Title VII prohibits discrimination on the basis of gender and sex stereotyping. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989). Based on sex stereotyping, the Equal Employment Opportunity Commission determined in 2015 that "sexual orientation is inherently a 'sex-based consideration,' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII." *Complainant v. Anthony Foxx*, EEOC DOC 0120133080, 2015 WL 4397641, at *5 (July 16, 2015). Last year, the Seventh Circuit embraced this logic and held that "a person who alleges that she experienced employment discrimination on the basis of her sexual orientation has put forth a case of sex discrimination for Title VII purposes." *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 351–52 (7th Cir. 2017) (en banc). The Second Circuit is also currently considering this argument en banc. *See Zarda v. Altitude Express*, 855 F.3d 76, 82 (2d Cir. 2017), *reh'g en banc granted* (May 25, 2017).

Here, the Court need not determine whether discrimination on the basis of sexual orientation constitutes sex discrimination under Title VII because Plaintiff fails to state a *prima facie* case of sex

discrimination and Defendant does not seek dismissal of Plaintiff's claims of retaliation and hostile work environment.

For the discrimination claim, Defendant does not dispute that Plaintiff is a member of a protected class, is qualified for her position, and that her alleged constructive discharge constitutes an adverse employment action. *See* (Instrument No. 13 at 19). However, Defendant seeks to dismiss this claim on the basis that Plaintiff does not allege that she was treated less favorably because of her membership in a protected class than other similarly situated employees who were not members of the protected class. *Id.*

In stating a claim for discrimination, a plaintiff cannot rely on a general pleading that she was treated less favorably than other similarly situated employees outside of the protected class. *See Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221 (5th Cir. 2001); *see also Smith v. Wal–Mart Stores (No. 471).,* 891 F.2d 1177, 1180 (5th Cir. 1990) (noting that a plaintiff must demonstrate "that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.").

Here, Plaintiff has not identified any comparators to whom she was treated less favorably. The details of Plaintiff's constructive discharge are scant, and there are no allegations that the discharge was based on Plaintiff's sex or sexual orientation. *See* (Instrument No. 12 at 12). The Complaint simply states that Plaintiff was "contacted via telephone by Lt. Stanford and told that per Chief Cook that she needed to 'resign or quit.'" *Id.* However, Plaintiff has not identified any other employee to whom she was treated less favorably because of her membership in a protected class. Accordingly, Plaintiff's discrimination claims under Title VII and the Texas Labor Code are **DISMISSED.**

11

**D.**

Plaintiff also brings claims under Title IX of the Civil Rights Act because she worked for a school district that receives federal funding. (Instrument No. 12 at 23). Defendant seeks to dismiss these claims on the basis that Title VII provides the exclusive federal remedy for employment discrimination, even in the context of educational institutions. (Instrument No. 13 at 23).

In *Lakoski v. James*, the Fifth Circuit held that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." 66 F.3d 751, 753 (5th Cir. 1995). Even when an employee works for a school district, "Title VII occupies center stage" because recognizing employment-related causes of action under Title IX would "disrupt a carefully balanced remedial scheme for redressing employment discrimination." *Id.* at 754.

Plaintiff devotes several pages of her response to explaining why *Lakoski* was wrongly decided but does not cite any case in which a plaintiff has brought both Title VII and Title IX claims for the same conduct. Plaintiff also does not cite any authority in which Title IX has been invoked to address employment discrimination. Rather, Title VII seems to be the exclusive federal remedy for individuals alleging employment discrimination, as the Fifth Circuit recognized in *Lakoski*. 66 F.3d at 753. Accordingly, Plaintiff's claims under Title IX are **DISMISSED.**

**E.**

Plaintiff also brings claims under 42 U.S.C. § 1981 for discrimination on the basis of sex, sex stereotyping, and sexual orientation. (Instrument No. 12 at 26). Defendant moves to dismiss these claims by asserting that § 1981 only applies to race and has never been extended to sex or sex discrimination. (Instrument No. 13 at 24). Section 1981 states:

12

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Courts have repeatedly held that § 1981 only applies to race. *See Alizadeh v. Safeway Stores, Inc.,* 802 F.2d 111, 114 (5th Cir. 1986) ("§ 1981 proscribes only racial discrimination"); *see also Evans v. City of Houston*, 246 F.3d 344, 356 n.9 (5th Cir. 2001) ("§ 1981 prohibits only racial discrimination.").

In response to Defendant's motion to dismiss, Plaintiff does not address her claims under § 1981. *See* (Instrument No. 14). Because Plaintiff's § 1981 claims in the Complaint are based only on sex, sex stereotyping, and sexual orientation, Plaintiff's claims under § 1981 are **DISMISSED**.

## F.

Defendant seeks to dismiss Plaintiff's claims for punitive and exemplary damages because these remedies are unavailable against governmental entities under Title VII. (Instrument No. 13 at 26); *see Oden v. Oktibbeha County, Miss.,* 246 F.3d 458, 465-66 (5th Cir. 2001) ("The Act [Title VII] precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions."). In response, Plaintiff does not address Defendant's motion to dismiss punitive and exemplary damages. *See* (Instrument No. 14). Accordingly, Plaintiff's claim for punitive and exemplary damages is **DISMISSED**.

**IV.**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED. (Instrument No. 13).** Plaintiff's claims of 42 U.S.C. § 1983, invasion of privacy, discrimination under Title VII and the Texas Labor Code, Title IX, 42 U.S.C. § 1981, and exemplary damages are **DISMISSED with prejudice.**

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 23rd day of February, 2018 at Houston, Texas.

VANESSA D. GILMORE
**UNITED STATES DISTRICT JUDGE**